Good morning everyone. The first argued case this morning is number 137065 Andrews v. Shinseki. Mr. Carpenter. May it please the court. Kenneth Carpenter appearing on behalf of Mr. Edward Andrews. At issue in this case is whether or not the implicit denial rule, which is a rule that was created by this court in the DeShogol case, can be used as a defense or a basis for denial of a request for revision based upon clear and unmistakable error. The implicit denial… It strikes me that this has gotten a little convoluted. I mean under DeShogol, as I understand it, there's an implicit denial. There's been a decision here on the TDIU claim. And then the question when you challenge that as cue is whether the evidence of a record that was before the board in the… at the earlier time in 1983-1985 unmistakably established TDIU. That's correct. It strikes me that it's that simple. And I agree that the board here didn't seem to address that question directly. They seem to say, well, there was no cue because there was a decision, which doesn't make much sense. On the other hand, it strikes me that you didn't really argue the evidence to the board here. And that's the problem I'm having. So help me with that. When you say I didn't argue the evidence… You didn't argue that the evidence established cue. Well, what we argued was… Evidence that was there in 1983-1985, whatever it was. Well, I believe we did, Your Honor. And what we argued to the board was that the error, the clear and unmistakable error, was in the original ratings decision's failure to consider and apply the provisions of 4.16B. I don't understand that that's the error. The error, if there was one, was in not finding that there was TDIU based on the evidence that was in the record. Correct, Your Honor. And you have to use that regulation as the mechanism to make that analysis. Okay. So show me where that was argued. Because that's not… I looked at the arguments that you made before the board and before the Veterans Court, and I didn't really see that you made the argument that the evidence unmistakably established TDIU. Well, the way in which both the request for revision was framed and the argument before the Veterans Court was whether or not the board had correctly applied 4.16B, which is the same allegation of error in the ratings decision in 1983. And the opening… Mr. Oh, I'm sorry. Go ahead. I'll let you finish. The opening brief to the Veterans Court specifically addressed the question of whether or not the board correctly applied 4.16B, which means that they applied… Where do I find that? In the opening brief… I'll get the citation for you, Your Honor. It's at 57 to 70, specifically at pages 63 to 65. Mr. Carpenter, I… So I understood part of your Q claim to be – and you'll let me know if I'm right – that the board, there was an implicit claim for TDIU that was made in 1983, and it wasn't decided. And I understood that to be part of your Q claim. And although you didn't exactly phrase it this way on appeal, one of the things that is bothering me – and I'm wondering if you can speak to it. And if you can't speak to it here on appeal, then maybe we could get supplemental briefing or something. But one of the things that's bothering me is the board, as a factual matter below, held that there was no implicit claim for TDIU that was made. But if there was, it was equally implicitly decided. And I almost felt like it was somewhat tongue-in-cheek. And what bothered me about it is, how can the board say it implicitly decided something that it says in the same breath was never argued or raised or before them? And so I don't know if judicial estoppel is the right rubric, but what's bothering me about this case is the board's internally contradictory statements. And implicit denial requires, as a predicate, someone to have looked at and adjudicated the issue. And if the board made a fact finding that the issue wasn't presented, I don't know how they could then say it was implicitly denied in silence. So I guess my question to you is, you didn't exactly frame it this way in your brief, but can you talk to me about whether or not you think that there ought to be some sort of, I don't know if judicial estoppel is the right word, because this is an administrative agency, but whether there is some problem with the board's ability to do that. And whether or not that is what you would think of as part of your appeal. Well, I believe it is inherently part of this appeal because it goes to the question of how the implicit denial rule is to be used. It is my understanding, as you just articulated, that the implicit denial rule is the predicate for determining that finality exists. And the board did make somewhat inconsistent determinations, and I think the distinction they were trying to make was that there was no explicit adjudication of TDIU, but there was an implicit denial. Now, mayhaps I'm giving the board more credit than they deserve, but it seemed to me that that was the distinction that they were making, that they acknowledged that TDIU was raised by the evidence. Really? No, wait. On JA-50, do you have your appendix handy? This is the board's opinion on JA-52. At the bottom of JA-52, do you see the words, even if? I'll give you a second. Let me know when you're with me. Bottom of 52? Oh, even if. Yes, I do. Even if the board accepts, which it does not, that the evidence of record at the time of the 83 rating decision should have been interpreted as an implicit TDIU claim. Okay, so is that not a fact finding by the board that there was a factual matter? They do not interpret this record as raising an implicit claim. Because if that's what that fact finding is, which is the way I interpret it, I find it really troubling that they can later claim that something that was never presented to them was nonetheless in silence implicitly denied by an opinion of theirs. And I believe that that is a correct statement, but it is so well concealed, Your Honor, in the decision that we normally look to the findings of fact, which are at JA-48. And those findings of fact are simply that the rating decision granted a 10% rating, and then that it implicitly denied the entitlement to a rating of 10% for PTSD, including a PTSD rating. But might it be a legal question whether you can implicitly in silence deny something that you're at the same breath saying was never raised? I mean, I'm trying to figure out whether it's legal or factual, and in fact, whether or not this is an argument that you believe that you are fairly raising. I mean, honestly, your answers to me right now almost suggest that you don't think I'm reading the board opinion properly. And if that's so, I'm really glad to hear you tell me so because I don't want to go off on a crazy tangent all by myself. No, Your Honor. The difficulty with this decision is that under the Richardson case below, the Veterans Court has said that the determination of finality has to be made first. And that was the way that Mr. Andrews pled his claim, saying that all you decided in that rating decision in 1983 was the scheduler aspect and not the extra scheduler aspect. And it was reasonably raised by the evidence that existed at the time, and you should have adjudicated it. They made a determination that, as you just quoted in the decision, that they concluded that it had not been raised and or decided, and yet they made a finding of fact that it was implicitly denied. But I guess tell me how I get at this because I can't do fact findings, and I get that. I don't like it, but I get it. So the question to me is, in what way does my court have the ability to give the relief that you're seeking? Is it that there is some sort of legal doctrine? Maybe should I be looking at implicit denial as a legal issue? I mean, it seems factual, like a fact finding to me. So help me figure out a way to think about this. I believe the route is this court's interpretation of its own judicially created rule of implicit denial. And that, as Judge Dyke indicated, the implicit denial rule is limited to simply determining finality, and they can't do both. They can't use the implicit denial rule as a basis to deny the Q claim, which is what we presented below, that they misused that and what we're presenting in this appeal, that they misused the implicit denial rule as a mechanism to deny a request for revision. But see, I'm not with you on that. I'm just going to be honest with you. I'm not with you on the idea that implicit denial can never be used to reject a request for revision as a matter of law. The problem I'm having, though, which is, I think, nonetheless helpful to your cause, is that implicit denial can't be used in the face of their own fact findings to the contrary, their own fact findings that would make the notion of implicit denial inherently, as a matter of law, wrong. And so that's the problem I'm having. So as I said, I realize it's near the argument that you're making, but not necessarily squarely on point with it. And so I'm trying to figure out if it's an estoppel concept, if it's – it's bothering me, and I don't know if, A, I have the authority to go to it, and, B, if I do have the authority to go to it, under what rubric am I able to reach this conclusion? Well, I think this court has the authority and the jurisdiction to review its own judicially created rule of law and determine whether or not both the Veterans Court, in affirming the board, and the board in its action, correctly utilized that rule of law. Well, your argument is, isn't it, that the board should have looked at the evidence to see whether TDIU had been established unmistakably? And that – I mean, it's that simple. And clearly, based on the portions of the decision that Judge Moore read you and also based on the material on page 54, they didn't do that. Correct. Now, but the question I have, the problem is, did you argue that they should? Well, I believe that that was what we were intending to do by indicating to the Veterans Court in our second argument that the board misused the implicit denial rule, that they could not use the implicit denial rule in the manner in which they did. And what the lower court found was – That's clearly the case. Implicit denial means there's a decision. Then the question becomes, is that decision cued because the record established TDIU? But if, as Judge Moore pointed out, that decision was not final, then under Richardson, you're dealing with a pending claim. They didn't do what they should have done, which is to look at the evidence and see if it established TDIU. Well, I absolutely agree with that, John. But I think they also failed to determine whether or not this was a pending claim because based upon the finding that Judge Moore – It didn't have to do with anything. I don't understand that. Implicit denial means there's been a decision. There's no pending claim anymore. And the only way to go after it, as we said explicitly, is by cue. And the question under cue is whether the evidence shows TDIU. Mr. Carpenter, I mean, you're explaining it in a very confusing way. Let me see if you think that what I'm about to say is something that you would agree with, which is that if we were to conclude that they never implicitly denied it as a matter of law because you can't implicitly deny something when you state the contrary of it, then it was never adjudicated. This isn't technically – it's a cue claim for failure to adjudicate, not a cue claim for adjudicating improperly. I think that, to be fair, you may have raised both of those arguments. Is that the way you would try to claim you said you failed to deny it? And if you – gosh, for goodness sakes, if you're going to say you did deny it, you denied it wrongly in contradiction of 4.16. That's correct, John. Is that okay? Yes. And I see that I'm way into my rebuttal time. Let's hear from the VA. We'll save your rebuttal time, Mr. Carpenter. Thank you. We need to explore these issues. Mr. Goodman. Good morning, Your Honors. May it please the Court. The problem going to Judge Ike's question is that he didn't, in his cue claim, say what one would normally expect to say in a cue claim. He didn't say the evidence clearly establishes TDIU, this is the evidence that wasn't given the way it should have been given or whatever, and he's entitled to TDIU. All he said was the Regional Office 1983 failed to consider it. So the Board, addressing that specific cue claim, said, yes, it did. It did consider it, and that's it. And the Board stopped there because that's all that the Board was asked to do is to address that specific cue claim. So the problem here and the reason it's gotten so confusing is because the cue claim that was brought doesn't actually bring a cue claim. It doesn't say what it needed to say to actually allege cue. All it said was you didn't raise it. And the question of what that cue claim raises is a question of fact. And this Court clearly stated that in Ellington v. Heath. The question of what is in a claim is a question of fact, and this Court doesn't have jurisdiction to alter that. The Board here, and I direct the Court's attention to an appendix page 50. The Board said, and I'll quote, the specific and only allegation of error is that the July 1983 rating decision failed to sympathetically read the appellant's claim for disability compensation for PTSD to include entitlement to TDIU, to a TDIU rating based on unemployability. So that was the only cue claim raised. If he had raised some other cue claim, if he had said I should have gotten TDIU, the evidence clearly established a TDIU, the Board would have said something different. Okay, but wait. But then let's look at page JA27, which is his brief below, and look at the last sentence on that page. Pursuant to either of these regulations, a sympathetic reading of Mr. Andrews' claim for disability compensation and the evidence then of record, this is what they're characterizing his claim, should have led to an extra scheduler rating based upon unemployability because the evidence showed his inability to work due to his service-connected post-trauma stress disorder. How is this not him raising exactly what you said he never raised verbatim? Most importantly, because the Board said the one and only allegation of error was that they failed to raise it. So that's a fact finding. But the Board said what? I'm sorry. The part I just quoted. The Board said – Are you reading – which Board opinion? Is this the JA48 one, the same one that Mr. Carpenter and I were looking at? Yes. Okay, and what – So I'm looking at JA50. Fifty. The middle paragraph. Yes. The Board said the specific and only allegation of error is, and then the Board goes on. Okay, go on though. Go ahead. Tell me what the rest of it is. The July 1983 rating decision failed to sympathetically read the appellant's claim for disability compensation for PTSD to include entitlement to TDIU rating based on unemployability and the VA failed to – Okay, based on unemployability. And what's the last part? The VA failed to consider and apply 38 CFR 3.34, 0A, and 4.16B. So the Board is saying there's one error here. It's a failure to consider TDIU. So the Board responds to that and says, well, the regional office did consider TDIU, and they implicitly denied it. And that was the – But the Board doesn't respond to it and said the regional – the Board's response is the part I read. As a factual matter, they find that he didn't implicitly create a claim for TDIU in 1983, and so they wouldn't have to – why do I have to decide something that wasn't actually raised? I mean, that's the part that's bothering me, is they expressly find he didn't make a claim. And it's really hard to predicate an implicit denial on a factual statement that predicates that you didn't raise this claim. The Board did both. We agree with Mr. Carpenter here. If you look to the Board's finding of fact on Joint Appendix 48, the Board said the rating decision implicitly denied entitlement. There is no fact-finding here to say it wasn't raised. Well, yes, but we have to – the implicit denial rule, we have to look at it, right? Don't we have to say – I mean, didn't we create it here, right? Didn't we create this implicit denial rule out of whole clause? So if it's a legally created doctrine by our court, don't we have a right to look at the parameters? Not necessarily the application to an individual case. That might be law to fact. But as a legal matter, is the Board permitted to say one thing? It wasn't raised, and we didn't decide it. But if it was raised, we implicitly decided it. But as a factual matter here, the Board didn't make a finding of fact that it wasn't raised. Sure, it did. Under the finding of fact on page 48, it doesn't say it wasn't raised. Wait, are you telling me that the only thing I should ever look at in a Board opinion is the two bullet points at the beginning? Absolutely not. And the rest of the opinion is not viable? Those are findings of fact. Why isn't this also a finding of fact? It wasn't raised. There was no implicit TDIU claim in 83. First of all – Why isn't that a finding of fact? Because they didn't actually say, here is a finding of fact. It wasn't raised. The Court could look at which it does not and say that's a finding of fact. Because it says which it does not, which is what Your Honor is pointing to on page 53, that the Board was making two findings here. One, that it wasn't raised. And one, that it was implicitly denied. You say that as though it's my interpretation. But let's look at the first sentence of the Veterans Court opinion. That's exactly where I was going to turn you. Let's go there. It's not the first sentence, forgive me. It's on page 2. I think you're going to go to the same exact spot as me. Page 2 at the top. In the decision on appeal, the Board denied Mr. Andrews' assertion of cue on two alternative bases. First, the Board found the claim for benefits of unemployment did not constitute an implicit claim for TDIU. Right. So the Veterans Court interpreted the Board as not making just those fact findings at the beginning that you mentioned, but also explicitly that sentence that I thought looked like a fact finding they thought it was too. Yes. And the Veterans Court didn't affirm on that basis. The Veterans Court affirmed on the second basis. Right. Because right after that basis, they say, although the Board offered little rationale for this finding. Right. I mean, it's sort of – but I guess the heart of my problem isn't what basis did the Veterans Court affirm on, it's is this judicially created implicit denial rule, which says veterans don't get a benefit that they sought, even though the Board might not speak to it. It's implicitly denied. Is that really something that ought to extend to a circumstance as a matter of law, where the Board itself acknowledges the claim wasn't before the Veterans Agency? I'm not sure, as a matter of law, the implicit denial rule, which we created, ought to extend to a circumstance where the Board itself believes the claim wasn't made. The problem with that, we tried to describe in detail in our brief, in our second argument, that if the Board can't – if as a matter of law it can't be implicitly denied, then we're left with a situation where all the veteran does is say, you didn't consider it. And let's say the Board had found the alternative finding here and say, you're right, it wasn't considered. It wasn't considered. That's an error. But it can't be cued. It can't be cued because that error doesn't lead to anything. It's just like a failure to assist at this court address en banc. Because it's not an outcome determinant. Exactly. Let me see if I can clarify this a little bit. Under implicit denial, whatever his claim was, it was denied in 1983. Now that denial could have been based on two things. One, that he didn't raise a TDIU claim at all. Or two, that the evidence didn't establish TDIU if he did raise such a claim. What has been the government's argument? Does the government argue that he didn't properly raise a TDIU claim in 1983 and therefore it was properly denied? Or was the government's argument based on the second, that even if he raised the claim, the evidence didn't support it? Because of the nature of his cued claim, the government didn't address that distinction. The government said he didn't make that claim. That claim you're describing, that cued claim that would have been viable, he didn't raise. That's not true. He certainly raised the first of those two. He said that the veteran did raise in 1983 a cued claim. And to the extent that the board said he didn't raise a cued claim, they were wrong. And the government said the evidence shows that it was a cued. That's the second question. To the second question, yes. So does the government agree that he raised a TDIU claim in 1983? No, that's a fact question that the board found. No, no. What did you argue below? Did you argue that he didn't raise a cued claim? Well, there was no argument to that at all before the veterans court because that wasn't raised by the evidence because the board had found that it was implicitly denied. Why shouldn't we just send this back to the veterans court and tell them, look, there was an implicit denial here. We've already held that. You've got to address two questions. One, was there a TDIU claim properly raised in 1983? And two, if it was properly raised, does the evidence show TDIU? The appropriate way to get to that conclusion would be for Mr. Andrews to specifically raise that cued challenge. And he can still do that now. He could have done it anywhere along the way here. As soon as the regional office said, the only thing I see here is you're saying they failed to consider TDIU, he said, no, no, that wasn't what I was trying to say. What I was trying to say is that it's been implicitly denied, which is what he's saying now, that it's been implicitly denied and they were wrong to do so. He could have brought that as a cued claim anywhere along the way. I heard you say he can do it now. Yes. And it seems it must be clear that there is concern as far as this veteran is concerned that this particular issue was not explored to the full depth to which it might have been, at least from the dates at which it might have been attributed to. Does this fall into the category of a situation that's happened from time to time where the VA has taken the entire case back and essentially started again to assure that every issue that affects this veteran is properly considered at the appropriate level? We can, we may, as has been mentioned, put it back through the chain, but there is a concern not just as to how the broad principles of implicit denial work, but also how they apply in this particular case. And I have the sense that perhaps the VA appreciates that in this particular case, there were issues that might have been given more complete or more thorough or different treatment along the path that got us here. Two points, Your Honor. It's beyond this court's jurisdiction, but we have a footnote describing what else was in the record then to give a flavor for the sense that we don't think there's any cue here in this decision. Well, it's not beyond our jurisdiction to say we're not clear what the Veterans Court was saying, so we're sending it back to them to tell us what they're saying. Well, that's certainly true, Your Honor. But it's beyond this court's jurisdiction, the second point I was going to raise. It's certainly beyond this court's jurisdiction to say what was raised in the cue claim. The board found, and the Veterans Court affirmed, that the only claim brought here was the VA reconsideration. That's not the suggestion. The suggestion is we can't figure out what you did here. What you should have done is determined whether they raised a cue claim and then whether on the evidence the cue claim was established, and we'd like you to tell us what your views are about that. It may result in a decision that it's not reviewable because it's a fact determination, but right now you can see we're struggling trying to figure out what happened below here in these very confusing board and Veterans Court decisions. It is incredibly confusing, Your Honor, but the reason it's incredibly confusing is because of the cue claim that's in here. The board looked at the cue claim and said the only thing you seem to be raising, despite that language that Judge Moore pointed to, the only thing you seem to be raising is a failure to consider. So, yes, we think it has been considered, and that ends the matter. And that's confusing because the cue claim itself didn't say enough, and that's a question of fact. So it wouldn't be right to send it back through the process that ultimately wouldn't help the Veteran. What would help the Veteran, if there is cue, if there actually is cue here, is to have a cue claim filed that says he's entitled to TDIU for the following specific reason. Address that on the merits, not to say you failed to consider TDIU. That's the allegation he made here, and that's the problem. Why? And I'm not trying to pin you down. You know when I'm doing that, and I'm trying to figure this out. So why? Help me understand why, because he alleged that the client was entitled to unemployability benefits. And there are a couple of places in this record where, I guess what, some of the physicians talked about him being unemployable or something like that, right? I mean, there's a couple of instances in the record at that time, when the words unemployable or not able to hold a job or something came up. So that's clearly the evidence upon which everybody is talking about. So I guess are you saying that that evidence on its face isn't strong enough to establish entitlement to the benefits, and that's why? But that's the thing. When was that decided, or where was that decided? That's what's troubling me. It wasn't because he hasn't raised it. I mean, that's the problem. Can I turn the Court's attention to Joint Appendix page 91, which is the regional office decision first denying this Q claim. And the heading in that decision, the issue the regional office was considering is whether a clear and unmistakable error was made in the rating decision dated July 28, 1983, for failing to consider extra schedular unemployability. So the regional office, like the Board, saw the only issue being raised here is, did we fail to consider it? That's the problem, is looking at the Q claim, what did he actually raise in his Q claim? That's very confusing, because the implicit denial rule says that it was denied, right? Yes. And I think what they should have done, clearly, is to say, well, let's first decide whether he raised a Q claim, whether there was sufficient evidence there. I would have thought that the evidence was enough to raise a TDIU claim. And the second question, which nobody seems to have addressed, as far as I can tell, is whether the evidence of record at that time was sufficient to establish TDIU. I understand exactly where your honor is coming from, and I agree. What the Q claim should have said is the record for us establishes TDIU for these reasons, for these specific reasons. And as, of course, Senator Andre, it needs to be specific, explain what the error is, and then ask for a decision on that. But neither the regional office nor the Board thought that's what he was asking for. And maybe they were confused, but that's a question of fact. No, it's not a question of fact whether they were confused. It's a question of fact, your honor. Let me be clear. It's a question of fact what the Q claim raised. I read the Q claim the same way they do. I look at that Q claim, and that's Joint Appendix 26 to 31. I read that whole thing, and it looks like what he's saying is you failed to consider TDIU. He's not – he didn't appear in this document to understand what your honor just explained. That means it was implicitly denied. It means it was denied. Now we need to go to step two. But wait, but that's – but he does. That JA-27 says, quote, the evidence set of record in 1983 should have led to an extra scheduler rating based on unemployability because the evidence showed his inability to work due to his service-connected PTSD. I give you – I grant you that if I have to pick just one thing in that document, there's no doubt the thing that jumps out at me is failure to adjudicate. No doubt. It's over and over and over again in that Q claim and in all the briefing and everything else. But didn't this – isn't this enough? Isn't the fact that he did say – he does have all the way back to that very document a statement saying the evidence of record showed his inability to work. Isn't that enough? And there's – This is a veteran, you know, and back then – Absolutely. Back then, you know, I mean, come on. Your Honor, looking – And by the way, you guys granted him TDIU just a couple years later. So this isn't a case where – we all agree. The guy's got PTSD. What, four years? He had 30 different jobs. You couldn't hold him down. I mean, the thing is on the merits, the guy's entitled. You're here arguing process. And that's the hard thing for me is I also think in the process, how does the board say, well, you didn't raise it, so we didn't decide it. But if you did raise it, wink, wink, we decided it. You know, I mean, that's the part that's bothering me. It's just too cute by half. I certainly understand that. He was ultimately granted full benefit. That doesn't mean that there was cue in the 1983 decision at that time that he was entitled at that time to all of this. And reasonable people within the VA throughout have looked at this evidence, and they didn't see a problem. Now, he didn't directly appeal that. I'm glad you didn't give it to the unreasonable ones in the VA. The real problem here, Your Honor, is to take that one sentence on Joint Appendix 27 and to pull that out and say, actually, there's another claim here. There's another cue claim. He's raised two claims. This is what I understand Your Honor to be saying. He's raised two different allegations of cue, as he says he did. Now, that's not what the regional office of the board found, as a matter of fact. And this court said, clearly, in Kernia and Ellington v. Peek, the interpretation of the contents of a claim for benefits is a factual issue over which we do not have jurisdiction. So this court can't say now. There were two claims here raised. We're going to remand it to consider that second claim. What the court can say is we're affirming this decision because the cue claim here didn't raise what he's now saying it raised, as a matter of fact, because the board found it didn't. And he can raise another cue claim, which he could have done at any time. If he thinks that the record in 1983 truly establishes TDIU and that the decision of the contrary is clear and unmistakable error, he can raise that cue claim. We don't think he does. There's other evidence in the record, as we explained in our footnote. There's evidence of a lower back disability that the regional office could have reasonably thought that was the reason he couldn't work, because he had worked up steel and couldn't lift. Let me read you the last or the penultimate sentence of the board's decision here on page 54. It says, there's simply no basis for finding cue in that RO decision on that basis of a failure to consider TDIU because, as discussed above, any implicit claim was denied. That seems to say there can't be cue because there was an implicit denial. That's ridiculous. It doesn't make any sense. That is ridiculous and doesn't make any sense as a general concept until you look at the specific cue claim that was raised here, which was an allegation. The problem is that doesn't make any sense. It says the cue is failure to consider TDIU. And so they're just responding to that and saying, well, that cue isn't present here. That was the whole second argument in our brief is to flesh out exactly why that kind of an allegation of cue doesn't make any sense and can't ever be cued, just like this court doesn't code. Can I ask one final question? And then I'll stop. So here's my last question. If I were to conclude as a matter of law that the implicit denial rule doesn't allow the board to say it implicitly denied something which it simultaneously claims wasn't raised, as a matter of law, that can't happen. It's too internally contradictory. And tell me what happens in this case. Nothing would change here because the Veterans Court didn't affirm that other finding. The Veterans Court affirmed on the basis that it was implicitly denied, and that was the thing that was raised in the cue claim. But if I find as a matter of law it wasn't implicitly denied as a matter of law because they misunderstood the implicit denial test. But as a matter of law, should I just explain it had to have been denied to even raise cue? No, but I just found it wasn't because as a matter of law, they misunderstand the implicit denial. So then what happens? And that goes against what this court said in Roberson, I think, because this court said that in the circumstance when one claim is denied and the other one is not, it's not that it's still pending, but it's that it was implicitly denied. So if this court were to find contrary to that, then we'd be back where I believe the government actually argued that specific outcome back then, and this court found that that's not correct. Thank you. I think we have a position. Thank you, Your Honor. Thank you, Mr. Goodman. Mr. Carpenter? Your Honor, I have nothing further unless there's questions from the court. No, I think we've explored this issue adequately. Thank you very much, Your Honor. Thank you both. The case is taken under submission. The court will stand in recess for 10 minutes or so. All rise.